IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-10435
_____


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRY WAYNE HESSON,

Defendant - Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas, Abilene Division
USDC No. 1:00-70-CR-ALL
_____

July 22, 2002

Before JOLLY, DeMOSS and PARKER, Circuit Judges:[*]

E. GRADY JOLLY, Circuit Judge:

Terry Wayne Hesson ("Hesson") pled guilty to a single count of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a). On appeal, Hesson argues that the district court erroneously considered his other uncharged acts of sexual exploitation with other minors as "relevant

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

conduct" under United States Sentencing Guideline ("U.S.S.G.") § 1B1.3 (2000), on the basis of which the district court increased Hesson's offense level under U.S.S.G. §§ 2G2.1(c)(1) and 3D1.4. Hesson also argues that the district court abused its discretion in additionally departing upward to the statutory maximum sentence pursuant to U.S.S.G. § 5K2.0. Although we agree with Hesson that the district court erred in considering his uncharged acts of sexual exploitation that were not part of the same offense to be relevant conduct under § 1B1.3, we find that the district court would have imposed the same sentence notwithstanding this error. We therefore AFFIRM Hesson's sentence.

I

Hesson transported a twelve-year old male from Abilene, Texas to a motel in Ruidoso, New Mexico, and made a videotape of the boy engaged in sexually explicit conduct. As a result, Hesson was charged with and pled guilty to one count of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a), pursuant to a plea agreement. During a search of Hesson's residence, the police found the videotape of the boy in New Mexico, numerous other sexually explicit videos of underage males made by Hesson, and other evidence of child pornography. The district court found, based on the videotapes, that Hesson had sexually exploited and videotaped at least seventy-four other minor males over a period of at least fifteen years.

In the plea agreement, Hesson and the government entered into several stipulations as to the applicability of several of the sentencing guideline sections. However, the plea agreement specifically stated that Hesson and the government did not agree on the applicability of U.S.S.G. § 2G2.1(c) to Hesson's sentence. Section 2G2.1(c) provides that if the "offense" involved the exploitation of more than one minor, then Chapter III, Part D of the Sentencing Guidelines (Multiple Counts), "shall be applied as if the exploitation of each minor had been contained in a separate count of conviction."

2

Application Note 1, Part (l), to U.S.S.G. § 1B1.1 defines "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." Section 1B1.3(a) defines relevant conduct, in applicable part, as follows:

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . .
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

The district court considered Hesson's uncharged conduct in videotaping seventy-four other minor males engaged in sexually explicit activities as "relevant conduct" under § 1B1.3. Therefore, pursuant to § 2G2.1(c), the district court relied on the multiple count provisions of § 3D1.4 (Determining the Combined Offense Level) to increase Hesson's base offense level by five. Under § 3D1.4, the district court can depart upward by five offense levels if it calculates that the defendant has more than five "units." "Units" are computed by taking into consideration the "groups" of offenses for which the defendant is responsible when there are multiple counts involved. According to the PSR, there were a total of sixty-nine units in this case.[1] The district court increased Hesson's offense level by two additional levels under the background language in § 3D1.4 authorizing a

---

[1] The PSR calculated that there were sixty-nine additional units, based on seventy-one victims. The PSR assigned one unit each to sixty-seven of the victims, based on these offenses being as serious or one to four levels less serious than the conduct to which Hesson pled guilty. See U.S.S.G. § 3D1.4(a). The PSR assigned half a unit each to four of the victims, because the levels for these offenses were five to eight levels less serious than highest offense level. See U.S.S.G. § 3D1.4(b). The difference between the seventy-one victims calculated in the PSR and the seventy-four victims found by the district court would result in a slightly different calculation of the number of units involved, but the difference is not significant.

departure "in the unusual case where the additional offenses resulted in a total of significantly more than 5 Units."

This resulted in a total offense level of thirty-five. Hesson had a criminal history category of I, resulting in a recommended imprisonment range of 168 to 210 months. However, the district court further departed upward under § 5K2.0 and sentenced Hesson to the statutory maximum of twenty years, based on the fifteen year or longer period over which Hesson committed his crimes, the existence of at least seventy-four victims, and Hesson's extensive videotaping and documentation of his acts of sexual exploitation, which the district court found took this case outside the heartland of cases contemplated by the sentencing guidelines. The district court also sentenced Hesson to a three-year term of supervised release, and ordered him to pay a special assessment of $100. Hesson timely appealed his sentence.

## II

The first question we consider is what the appropriate standard of review is in this case. Hesson did not object to the inclusion of § 2G2.1(c)(1) in the Pre-Sentence Report, nor did he object to its application at the sentencing hearing. Further, Hesson did not argue in his opening brief to this court that the district court should not have applied §§ 2G2.1(c)(1) and 3D1.4, and the "relevant conduct" provisions of § 1B1.3. He first raised this argument in his Supplemental and Reply Brief, filed after he substituted new counsel for his former attorney. Nevertheless, Hesson argues that he preserved the issue of the applicability of § 2G2.1(c)(1) by refusing to agree to its applicability in his plea agreement.

We have held previously that when a defendant fails to object, at his sentencing hearing, to an asserted lack of notice by the district court that it intended to depart upward from the

4

recommended guideline range based on factors contained in the PSR, and when the defendant fails to move for a continuance at the sentencing hearing, we review any alleged errors for plain error only. See United States v. Davenport, 286 F.3d 217, 219 (5th Cir. 2002). Here, Hesson did not object to the inclusion of § 2G2.1(c)(1) in the PSR or to its application at the sentencing hearing. Further, the district court did notify Hesson in advance that it was considering an upward departure in his case. Furthermore, we ordinarily do not consider issues raised for the first time in a reply brief. Therefore, we review the district court's application of § 2G2.1(c)(1) for plain error only.

III

In order for us to correct an unpreserved alleged error, there must have been, in the trial court: (1) an error; (2) that was "plain," i.e. clear or obvious; and (3) the error must have affected substantial rights (generally, it must have been prejudicial). United States v. Olano, 507 U.S. 725, 732-33 (1993). A court of appeals need not always correct a plain error. It need only do so "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id. at 735 (citation omitted).

Here, the district court did commit an error that was plain in its application of § 2G2.1(c)(1). The language in § 2G2.1(c)(1) states that "[i]f the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction" (emphasis added). There was only one offense actually charged here, and it only involved one minor. Although the term "offense" includes relevant conduct under § 1B1.3, see U.S.S.G. § 1B1.1, Commentary, Hesson's uncharged acts with other minors, which were not part of the same offense, cannot be considered relevant conduct under § 1B1.3.

Section 1B1.3(a) has four subparts that each provide for a different category of relevant conduct. Section 1B1.3(a)(1) includes as relevant conduct "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . ." Hesson's uncharged acts do not fall into this category, as they did not occur during the commission of the offense of conviction, in preparation for the offense, or while trying to avoid detection or responsibility for the offense. Section § 1B1.3(a)(2) includes as relevant conduct offenses "of a character for which § 3D1.2(d) would require grouping of multiple counts," but Hesson's offense is explicitly excluded from the grouping provisions. See U.S.S.G. § 3D1.2(d) (excluding offenses under § 2G2.1 from the grouping provisions of § 3D1.2). Section § 1B1.3(a)(3) includes as relevant conduct "all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions." However, because Hesson's conduct does not fall under §§ 1B1.3(a)(1) or (a)(2), it cannot fall under § 1B1.3(a)(3). Finally, section 1B1.3(a)(4) provides for adjusting the offense level for relevant conduct based on "any other information specified in the applicable guidelines." No other information has been specified here. It follows that, for the purpose of this sentence, Hesson's unrelated acts with other minors therefore are not relevant conduct under § 1B1.3, and cannot be considered part of the same offense under § 2G2.1(c)(1). Therefore, the district court should not have applied § 3D1.4 to Hesson's offense level, and to do so was an error that was plain.

Nevertheless, this plain error did not affect Hesson's substantial rights. Normally, if the sentence "was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such

6

instructions as the court considers appropriate." 18 U.S.C. § 3742. However, "[i]f the party defending the sentence persuades the court of appeals that the district court would have imposed the same sentence absent the erroneous factor, then a remand is not required under § 3742(f)(1), and the court of appeals may affirm the sentence as long as it is satisfied that the departure is reasonable under § 3742(f)(2)." Williams v. United States, 503 U.S. 193, 203 (1992) (applying harmless error review). In order to determine if a departure is reasonable under § 3742(f)(2),

> the [Sentencing Reform Act of 1984] directs a court of appeals to examine the factors to be considered in imposing a sentence under the Guidelines, as well as the district court's stated reasons for the imposition of the particular sentence. § 3742(e). A sentence thus can be "reasonable" even if some of the reasons given by the district court to justify the departure from the presumptive guideline range are invalid, provided that the remaining reasons are sufficient to justify the magnitude of the departure.

Id. at 203-04. After the district court increased Hesson's offense level under § 3D1.4 (erroneously), the court concluded that the sentence was still not yet long enough. The court was determined to sentence Hesson to the maximum that the statute would allow for one count in an indictment. It therefore departed upward to the statutory maximum sentence of twenty years under U.S.S.G. § 5K2.0. Under this section, "the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . .'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). The district court explicitly relied on the large number of other minors whom Hesson had exploited,[2] the many years over which Hesson engaged in the exploitation, and Hesson's extensive videotaping

---

[2]Although Hesson contested the district court's calculation of the exact number of victims involved, Hesson did not argue that he had not sexually exploited other minor children. Further, the district court's finding as to the number of victims was not clearly erroneous.

and documentation of his offenses, to justify its departure under § 5K2.0. These factors are the same regardless of whether the district court erroneously calculated the base offense level or not. Because the district court imposed the statutory maximum sentence based on these factors and not "as a result of" the erroneous application of §§ 1B1.3, 2G2.1(c)(1) and 3D1.4, the district court would have imposed the same sentence even if Hesson's offense level was not erroneously increased.

Further, we find that the sentence that the district court imposed was reasonable. The district court's stated reasons for departing upward to the statutory maximum (large number of victims, many years of exploitation, and extensive videotaping and documentation) were eminently reasonable, and were not otherwise adequately taken into consideration by the guidelines. Further, in the past we have upheld departures from recommended sentencing guideline ranges that were even greater than the departure here. With a criminal history category of I and a base offense level of twenty-eight (the offense level that Hesson would have received absent the erroneous calculations), the guidelines call for a sentencing range of seventy-eight to ninety-seven months. The upward departure from ninety-seven months to 240 months (the statutory maximum, which Hesson received) would be an additional 143 months, or a sentence 2.47 times longer than the recommended maximum of ninety-seven months. We have approved departures from the guidelines that were even greater. See, e.g., Davenport, 286 F.3d at 221 (approving upward departure from eighty-seven months to 240 months, or 2.75 times the recommended sentence); United States v. Roberson, 872 F.2d 597, 606 (5th Cir. 1989) (affirming upward departure in sentence from guideline range of thirty to thirty-seven months to 120 months, or 3.24 times the recommended sentence).

We hold that because the district court would have imposed the same sentence absent the error and because the sentence was reasonable, Hesson's substantial rights were not affected and there was no plain error in the imposition of Hesson's sentence.

IV

Hesson also argues that the district court abused its discretion in departing upward under § 5K2.0. However, as is clear from our discussion in part III, the district court did not abuse its discretion in doing so.[3]

V

For the reasons stated, Hesson's sentence is

AFFIRMED.

---

[3]Hesson also argues in a short footnote in his brief that it was ineffective assistance of counsel for his attorney to fail to object to the inclusion of § 2G2.1(c) in the PSR. However, Hesson does not develop this argument and does not show how he was prejudiced. Given our finding that the district court would have imposed the same sentence anyway and that the sentence was reasonable, there is no prejudice. His argument is therefore meritless.